```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    FOR ONLINE PUBLICATION ONLY
----------------------------------------------------------------- X
YVON NAZAIRE, DAVID CHENG, and                  :
JOHN MABOYOJE,                                  :
                                                :
                        Plaintiffs,             :
                                                :           MEMORANDUM
        - against -                             :           AND ORDER
                                                :
KINGSBROOK JEWISH MEDICAL CENTER,               :           04 CV 1415 (JG)
MARY MONG, LINDA BRADY, MEDICAL                 :
SERVICES OF SUFFOLK, P.C., a/k/a ISLAND         :
EMERGENCY MEDICAL SERVICES, and                 :
DANIEL FERRARA,                                 :
                                                :
                        Defendants.             :
----------------------------------------------------------------- X
```

A P P E A R A N C E S :

    MOORE & GOODMAN, LLP
        99 Park Avenue, Suite 1600
        New York, New York  10016
    By:   Jonathan C. Moore
        Attorneys for the Plaintiff Yvon Nazaire

    NIXON PEABODY LLP
        990 Stewart Avenue
        Garden City, New York  11530
    By:   Amy Ventry
        Christopher G. Gegwich
        Medea Myers
        Attorneys for the Defendant
           Kingsbrook Jewish Medical Center

JOHN GLEESON, United States District Judge:

        The parties have resolved all of the claims in this case except one:  Dr. Yvon Nazaire's claim that defendant Kingsbrook Jewish Medical Center ("Kingsbrook") breached a settlement agreement between them by refusing to permit Nazaire to resume working at Kingsbrook as an emergency room physician.  Kingsbrook has moved for summary judgment on

the ground that Kingsbrook's obligation to allow Nazaire to resume work in the emergency room was conditioned on his becoming board certified in emergency medicine, which he has failed to do. Oral argument was heard on the motion on August 25, 2006. Because the terms of the settlement agreement plainly and unambiguously require Nazaire to obtain board certification, Kingsbrook's motion for summary judgment is granted.

## BACKGROUND

Kingsbrook hired Dr. Nazaire in May of 1998 to work as an attending physician in its emergency department. In October 2002, Kingsbrook determined to outsource the administration of its emergency room and, to that end, entered into a "Professional Services Agreement" with Medical Services of Suffolk, P.C. ("Medical Services"), by which Medical Services became responsible for operating the emergency room, including staffing it with physicians. Kingsbrook's Professional Services Agreement with Medical Services provided:

> Each physician-associate of the Corporation [Medical Services] providing services pursuant to this Agreement shall within one hundred twenty (120) days from the effective date of this Agreement be Board Certified in Emergency Medicine and each Provider shall maintain certification in A.C.L.S., A.T.L.S. and P.A.L.S. Notwithstanding this provision, the Medical Director and Assistant Medical Director shall be board certified as of the effective date of this Agreement.

Declaration of Christopher Gegwich ("Gegwich Decl."), Ex. P, ¶ 3.16. The Professional Services Agreement took effect on November 1, 2002.

Nonetheless, Nazaire entered into a contract with Medical Services to take effect that same day that did not specifically require him to represent that he was board certified in emergency medicine. Gegwich Decl., Ex. R. ¶ 2.A. Nazaire continued working under his new contract without board certification until February 28, 2003, at which time he submitted his letter

2

of resignation, to take effect 60 days later, because he believed he was being subjected to race and national origin discrimination in the workplace. Amended Complaint ¶ 33, Gegwich Decl., Ex. S. Nazaire retained counsel and sought to pursue that claim.

Sometime in July or early August of 2003, Dr. Linda Brady, Kingsbrook's President and Chief Executive Officer, invited Nazaire, but not his counsel, to discuss resolving their differences without litigation. Brady and Nazaire reached an agreement in principle, although the parties now dispute whether the requirement of board certification was ever discussed at that meeting. In substance, Kingsbrook agreed to pay Nazaire's wages for the time he had been out and to allow him to resume working; Nazaire agreed to abandon his discrimination claims. On August 12, 2003, Nazaire again met with Brady, as well as with James Rayonne, who was then Kingsbrook's General Counsel, to execute a written settlement agreement. The agreement provided:

> Nazaire shall resume providing clinical services in Kingsbrook's Department of Emergency Medicine pursuant to the professional services agreement between Kingsbrook and Medical Services of Suffolk, P.C., provided that Nazaire abides by the terms and conditions of such agreement as it relates to physicians who provide clinical services ....

Gegwich Decl., Ex V., ¶ 5.a. The settlement agreement further stated that "[t]he settling parties hereby represent that they fully understand each term of this Confidential Settlement Agreement ... and that they agree to be bound thereby ...." *Id*. at ¶ 9. The agreement contained a standard integration clause, noting that the written version "constitutes the full, entire, and complete agreement between the parties," and also stated that "[n]o modification or waiver of any of the terms of this ... Agreement ... shall be valid unless made in writing, and signed by the settling parties." *Id*. at ¶ 8. Both parties signed the agreement, and Nazaire also executed a separate,

3

handwritten document, acknowledging his receipt of compensation under the settlement and stating that "Jonathan C. Moore is no longer representing me." Gegwich Decl., Ex. W.

At the time of the settlement agreement, Nazaire had passed the written portion of the board examination and was awaiting the results of the oral examination. He did not pass, and he was not permitted to return to work. At least one physician, however, was permitted to continue working in the emergency room without board certification, and Nazaire contends board certification was the exception rather than the rule. After re-hiring his counsel, Nazaire brought the instant action, including his claim for breach of the settlement agreement.

DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law governing the case identifies the facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.*

In a contract dispute, "a motion for summary judgment may be granted ... where the agreement's language is unambiguous and conveys a definite meaning." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993). A contract term is ambiguous only if it is "capable of more than one meaning when viewed objectively by a

reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997) (internal quotation marks omitted).

Kingsbrook argues that the settlement agreement incorporates by reference the requirement of board certification from the Professional Services Agreement between Kingsbrook and Medical Services, and Nazaire having failed to satisfy it, Kingsbrook was excused from returning him to work by the proviso, "provided that Nazaire abides by the terms and conditions of such agreement as it relates to physicians who provide clinical services." Gegwich Decl., Ex V., ¶ 5.a. Nazaire opposes Kingsbrook's motion by arguing that: (1) because he was neither given a copy of the Professional Services Agreement nor told of the board certification requirement therein, he was not required to be board certified in order to return to work; and (2) Kingsbrook has waived the board certification requirement by failing to discuss it with him and by allowing other emergency room physicians to continue working without board certification.

Kingsbrook is entitled to summary judgment. The Second Circuit has made clear that "[p]arties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements to which they are not a party." *Ronan Assocs. v. Local 94-94A-94B, Int'l Union of Operating Eng'rs*, 24 F.3d 447, 449 (2d Cir.1994). Indeed, "[u]nder general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt." *New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d 24, 30 (2d Cir.

5

1997) (citing 4 *Williston on Contracts* § 628, at 903-04 (3d ed.1961)). The settlement agreement unambiguously identified the Professional Services Agreement between Kingsbrook and Medical Services, specifically "as it relates to physicians who provide clinical services," and made it clear that Kingsbrook's obligation to allow Nazaire to return to work was contingent upon Nazaire's compliance with the requirements for emergency room physicians in the Professional Services Agreement. Thus, the terms of the Professional Services Agreement relating to "physicians who provide clinical services," among them the unmistakable requirement of board certification in emergency medicine, became part of the settlement agreement Nazaire executed. It is undisputed that Nazaire has never been board certified in emergency medicine, and therefore Kingsbrook was not obliged to allow him to resume work.

Because the written terms of the contract are clear, the extrinsic evidence Nazaire offers may not be admitted. *See RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) ("Where a contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence.") (internal quotation marks omitted); *Investors Ins. Co of Am. v. Dorinco Reinsurance Co.*, 917 F.2d 100, 104 (2d Cir. 1990) ("According to the parol evidence rule, Investors is precluded from introducing extrinsic evidence of the contract's purpose in order to vary the plain meaning of the writing.") Indeed, application of the parol evidence rule is "particularly appropriate" in this case "given the [a]greement's 'integration clause,' which provides that the [a]greement represents the entire understanding of the parties to the transaction." *Id*. It is therefore of no moment that Nazaire now claims he never received a copy of the Professional Services Agreement, or that he "believed and understood that he was returning to work pursuant to the October, 2002 contract"

6

he made with Medical Services, Pl. Mem. at 8, which did not require board certification. In executing the settlement agreement, Nazaire represented that he "fully underst[oo]d each term," one of which was the requirement of board certification incorporated by reference through the Professional Services Agreement. There is no plausible way to read the settlement agreement as incorporating the terms of Nazaire's individual contract with Medical Services instead.

Nazaire's waiver argument fares no better, as the settlement agreement stated that "[n]o modification or waiver of any of the terms of this ... Agreement ... shall be valid unless made in writing, and signed by the settling parties." Nazaire offers no writing that purports to waive the board certification requirement; rather, he submits only the observation that certain other physicians in the emergency were permitted to continue working without board certification. Where a written waiver is required, an implied waiver will not suffice. *See Bigda v. Fischbach Corp.*, 898 F.Supp. 1004, 1013 (S.D.N.Y. 1995) ("No waiver can have occurred here, however, because clause 11 of the employment agreement ... states, 'No provisions of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing signed by Employee and an officer of Employer,' and defendant has not produced a written waiver."); *Schmal v. McCulla*, 711 N.Y.S.2d 7, 9 (1st Dep't 2000) ("Under ¶ 12 of the agreement ... waiver of any provision may only be accomplished in a writing signed by the party to be charged, a condition not present.").

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is granted. The Clerk is respectfully directed to close the case.

So ordered.

7

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
August 28, 2006